

# Missouri Court of Appeals
## Southern District

### In Division

CHAD R. EMMERSON,                        )
                                         )
      Movant-Appellant,              )
                                         )
      v.                             )      No. SD38538
                                         )
STATE OF MISSOURI,                       )      **Filed:  April 17, 2025**
                                         )
      Respondent-Respondent.         )

### APPEAL FROM THE CIRCUIT COURT OF DOUGLAS COUNTY

### The Honorable Raymond M. Gross, Judge

### <u>AFFIRMED</u>

Chad R. Emmerson ("Emmerson") appeals the motion court's denial of his

amended motion for post-conviction relief under Rule 24.035[1] following an evidentiary

hearing.  In his single point on appeal, Emmerson claims the motion court plainly erred in

denying his amended Rule 24.035 motion because trial counsel was ineffective for

advising Emmerson to enter an *Alford*[2] plea and failing to advise him of all the direct

---

[1] All rule references are to Missouri Court Rules (2025).

[2] ***North Carolina v. Alford***, 400 U.S. 25, 37 (1970).  "An ***Alford*** plea enables a defendant to plead guilty to the charged crime and accept the criminal penalty even if he is unwilling or unable to admit he committed the acts constituting the crime."  ***Moore v. State***, 207 S.W.3d 725, 728 n.2 (Mo. App. S.D. 2006).

1

consequences of his *Alford* plea, thereby prejudicing him.  Finding no clear error, we affirm the motion court's denial of post-conviction relief.

## Factual Background and Procedural History

### The Underlying Offense

On April 15, 2021, there was a physical altercation between Emmerson and his wife, Chantelle Emmerson ("C.E.").  Emmerson had learned C.E. was involved in an extramarital affair.  During the altercation, Emmerson fired eight gunshots into C.E.'s vehicle.  Emmerson then physically assaulted C.E.  He "grabbed [C.E.], held her up, headbutted her, splitting her forehead open, he grabbed her by the throat and cut off her airway for a short period of time and he struck her on the right side of her face[.]"

### The Charges and Plea Hearing

Emmerson was charged by Substitute Information in lieu of Indictment with one count of domestic assault in the first degree and three counts of unlawful use of a weapon.  At the plea hearing, Emmerson entered an open *Alford* plea to domestic assault in the first degree (Count I) in exchange for the State dismissing the three counts of unlawful use of a weapon (Counts II through IV).[3]  The State's dismissal of the unlawful use of a weapon charges allowed Emmerson the chance at the possibility of probation on the charge of domestic assault in the first degree.

Prior to the plea hearing, Emmerson filled out and filed his Petition to Enter Plea of Guilty, which was admitted into evidence during the plea hearing.  He admitted therein

---

[3] The range of punishment for domestic assault in the first degree is five to 15 years' imprisonment.  The range of punishment for unlawful use of a weapon is a mandatory 15 years' imprisonment.

that: (1) he received a copy of the indictment, read it, discussed it with his attorney, and understood every charge made against him; (2) his lawyer "counseled and advised [him] on the nature of each charge, on all lesser included charges, if any, and all possible defenses that [he] might have in this case"; (3) by pleading guilty, the court "may impose the same punishment as if [he] had pleaded NOT GUILTY, stood trial, and then been convicted by a jury"; (4) his lawyer "informed [him] that the range of punishment which the law provides is 5-15 years' imprisonment in the Missouri Department of Corrections"; (5) "no officer or agent of any branch of government (Federal, State, or Local) has promised or suggested that [he] will receive a lighter sentence, or probation, or any other form of leniency if [he] plead[s] GUILTY"; and (6) he understood that the State promised that if he would plead guilty, it would recommend the court sentence him to "[a]ny lawful sentence on Count I" and that it would "[d]ismiss Counts 2 – 4." He also stated and understood: "I know that the sentence that I will receive is solely a matter within the control of the Judge. I hope to receive lenience, but I am prepared to accept any punishment permitted by the law which the Court sees fit to impose." He further stated: "I AM SATISFIED WITH THE ADVICE AND HELP MY LAWYER HAS GIVEN ME, and I have no complaints to make about my lawyer or the representation my lawyer has given me."

During the plea hearing, the State outlined the factual basis to support a finding of guilt as to the offense of domestic assault in the first degree as follows:

> [T]he State's witnesses would introduce at trial through admissible evidence that on April 15, 2021, [Emmerson] and [C.E.] were lawfully married and residing within Douglas County; that when [C.E.] was arriving at home on April 15th there was a physical confrontation between her and [Emmerson]; that [Emmerson] struck her with – that [Emmerson] struck her, including headbutting her, splitting her head on her left – just to the left

3

of center of her nose and an eyebrow, leaving a scar; that he also drew a weapon and discharged the weapon repeatedly into her vehicle while she was not in the vehicle but was near it. We do not believe at this time that he was firing at her, he was simply firing into a vehicle. After the [weapon] locked open on an empty magazine, [C.E.] would testify that [Emmerson], that's when he grabbed her, held her up, headbutted her, splitting her forehead open, he grabbed her by the throat and cut off her airway for a short period of time and he struck her on the right side of her face, all of which we believe is indicative of [Emmerson]'s intent to cause serious physical injury to [C.E.] and the actions he took were a substantial step toward the commission of that assault. All the above occurred in Douglas County, and that would be the evidence of the State.

Emmerson stated he understood the rights he was giving up by pleading guilty and the range of punishment for the offense. Emmerson stated that he had not been promised probation, understood that the court made no promise of probation, that the court did not have to follow any recommendation made by counsel as to sentencing, and that Emmerson could not withdraw his plea even if the court did not grant him probation.

> [THE COURT:] Okay. You're moving forward as an Alford plea, so you're not pleading guilty, only that the State has sufficient evidence by which you think a jury could convict you. Okay. Has anyone promised you that you would receive probation?
>
> [EMMERSON:] No, sir.
>
> [THE COURT:] Do you understand that the Court makes no promise that you will get probation and that this Court is not bound by any recommendation of your attorney or the attorney for the State?
>
> [EMMERSON:] Yes, sir.
>
> [THE COURT:] If the Court does not grant probation, you still cannot withdraw your plea of guilty. Do you understand that?
>
> [EMMERSON:] Yes, sir.
>
> [THE COURT:] Knowing all of this, do you still wish to make an Alford plea here today?
>
> [EMMERSON:] Yes, sir.

4

[THE COURT:] Do you have any questions about this proceeding so far that you would like explanation on up to this point?

[EMMERSON:] No, sir.

[THE COURT:] All right. So then as to Count I, [Emmerson] – is it Radell, am I pronouncing that correctly –

[EMMERSON:] Yes, sir.

[THE COURT:] – [Emmerson], how do you plead?

[EMMERSON:] Alford plea.

Further, the State outlined the range of punishment for the charge and explained that, if the court sentenced Emmerson to a term of imprisonment, he would not be eligible for probation or parole until he served 85 percent of the sentence.

THE COURT: [State], what is the range of punishment in this case?

[STATE]: The range of punishment in this case as a Class B felony is not less than five and not more than fifteen years in the Department of Corrections.

THE COURT: Okay. And [Emmerson], did you understand the range of punishment?

[EMMERSON]: Yes, sir.

THE COURT: Is there any enhanced range in this case?

[STATE]: No, Your Honor. Well, if sentenced to the Department of Corrections, [Emmerson] will not be eligible for probation or – or to parole until he has served 85 percent of that offense.

The court also asked Emmerson if anyone promised him that he would receive probation.

[THE COURT:] . . . Has anyone promised you that you would receive probation?

[EMMERSON:] No, sir.

5

[THE COURT:] Do you understand that the Court makes no promise that you will get probation and that this Court is not bound by any recommendation of your attorney or the attorney for the State?

[EMMERSON:] Yes, sir.

[THE COURT:] If the Court does not grant probation, you still cannot withdraw your plea of guilty. Do you understand that?

[EMMERSON:] Yes, sir.

[THE COURT:] Knowing all of this, do you still wish to make an Alford plea here today?

[EMMERSON:] Yes, sir.

The court accepted Emmerson's plea and entered judgment convicting him of domestic assault in the first degree, ordered a Sentence Assessment Report ("SAR") be prepared to aid the court in sentencing Emmerson, and set the sentencing hearing in the future.[4]

The SAR reported that Emmerson denied assaulting C.E. in his SAR interview, but that he expressed remorse. The SAR also revealed Emmerson received a Suspended Imposition of Sentence ("SIS") with probation twice before, both cases occurring in 1995, for felonious restraint of an individual and destructive property damage of someone else's property. The State requested the court sentence Emmerson to 12 years' imprisonment on this case. The court sentenced him to six years' imprisonment in the Department of Corrections. During Emmerson's sentencing, the State pointed out that Emmerson had received SIS and probation twice before in the cases from 1995, and the court stated that it was taking into consideration that Emmerson entered an *Alford* plea,

---

[4] Section 565.072, RSMo 2016, including changes effective January 1, 2017.

not a "straight [guilty] plea," which the court viewed as Emmerson failing to take responsibility for his actions.

> THE COURT: [I]t could have been a straight plea, not an Alford. Because when someone does an Alford plea, the way this Court views that is they're not owning the conduct that's been alleged, they're not owning it, okay, they're not saying this was me.
>
> [DEFENSE COUNSEL]: We're owning different conduct, it's clearly true. We agree that we are owning – we are owning the bullet holes –
>
> THE COURT: Now, I can –
>
> [DEFENSE COUNSEL]: – but pled to something a little different.
>
> THE COURT: Well, that's fine, counsel, but I – the system in my eyes has a difficult time reforming someone who pleads Alford, because they haven't owned it. The system has a difficult time reforming people who don't show regret or remorse because it's an Alford. What I cannot do then is offer something that sounds like reform, but what I can do is punish. That's what I'm inclined to do. I'm going to punish [Emmerson] for the charge.
> Now, it's my understanding that I can go, what, five to twelve, five to fifteen? What's the – what's my range?
>
> [DEFENSE COUNSEL]: That is the range of punishment, Judge.
>
> [STATE]: Yeah, five to fifteen.
>
> THE COURT: He's not going to get an SIS. He's not going to get [a suspended execution of sentence, an] SES. He's going to do time in the Department of Corrections in this case. But he's not going to get the max. This was rage. Everything that I see here was rage. While I can't punish her or sanction her for the things that she did that may have triggered your client, he is in control. I don't believe that she set him up. Nobody could have possibly planned this. Nobody plans this, this – you don't plan this. This is rage. These photographs show me rage, the destruction of things that have no monetary value simply to hurt the person that has enraged him, [C.E.] I'm not going to forget what may have led up to that, and that's – if there's anything to save him from 15 years, that's what's [sic] it.
>
> [DEFENSE COUNSEL]: We understand.
>
> THE COURT: I mean, he's – he lost control.
>
> [DEFENSE COUNSEL]: Admittedly.

7

THE COURT: Yeah. So he's going to do six years in the Department of Corrections. Now, I have to swear him in and go through some things. So if your client would raise his right hand and be sworn.

The court then advised Emmerson of his right to file for post-conviction relief pursuant to Rule 24.035. The court also questioned Emmerson regarding the assistance provided by defense counsel.

> [THE COURT:] . . . The attorney here with you today is [defense counsel] and he has represented you during your plea of guilt[y] and during your sentencing, and the question I have for you is did you have sufficient opportunity to discuss this case with [defense counsel]?
>
> [EMMERSON:] Yes.
>
> [THE COURT:] Did you attorney answer all of your questions?
>
> [EMMERSON:] Yes.
>
> [THE COURT:] Did he do the things you asked him to do?
>
> [EMMERSON:] Yes.
>
> [THE COURT:] Do you know if your attorney did anything that you asked him not to do?
>
> [EMMERSON:] No.
>
> [THE COURT:] Was your attorney assisted by any other attorney or an investigation, to your knowledge?
>
> [EMMERSON:] No.
>
> [THE COURT:] Do you have any complaints about your lawyer or any of the services that were performed by his office?
>
> [EMMERSON:] No.
>
>      . . . .
>
> [THE COURT:] [Emmerson], did you receive any threats or promises that caused you to enter your plea of guilty back in November?

8

[EMMERSON:]  No.

*Post-Conviction Proceedings*

Emmerson timely filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence pursuant to Rule 24.035.[5]  Emmerson claimed his guilty plea was unknowingly, involuntarily, and unintelligently entered because he was denied effective assistance of counsel.  Emmerson asserted counsel was ineffective for (a) failing to investigate the plea and sentencing judge's practices; (b) failing to seek a continuance in order for Emmerson to obtain medical care; (c) repeatedly advising Emmerson that he was guaranteed probation; and (d) advising Emmerson that "if any sentence imposed was ever executed that he would only serve a small percentage of it anyway."  Emmerson claimed "[g]iven the Court's rather absolute statements" about *Alford* pleas, "it is likely that counsel would have discovered this strong position[,]" but did not allege what investigation would have uncovered that information or what information would have been specifically discovered.  He claimed that if he would have entered a straight guilty plea, the court likely would have been "willing to entertain probation[.]"

An evidentiary hearing was held on Emmerson's amended Rule 24.035 motion. Emmerson testified defense counsel advised him that he would receive an SIS or SES; that both defense counsel and the State told him that he "would never do over 14 months" if he accepted the plea.  Emmerson stated that defense counsel advised him that an *Alford* plea would help in his ongoing dissolution proceedings.  Emmerson stated that he would

---

[5] Emmerson was sentenced on March 20, 2023.  Emmerson filed a *pro se* post-conviction motion on June 14, 2023, alleging ineffective assistance of counsel.  An amended motion was filed by appointed counsel on October 24, 2023.  We have independently verified the timeliness of his motions as required by ***Moore v. State***, 458 S.W.3d 822, 825-26 (Mo. banc 2015).

not have entered an *Alford* plea had he known the judge's views on an *Alford* plea, if he had been told he would have to serve 85 percent of any sentence the judge might impose, or if he knew he would not be getting SIS or SES. Defense counsel testified that he discussed the plea agreement with Emmerson "at great length." Defense counsel felt that a 15-year sentence was probable if they proceeded to trial; that the plea agreement offered the judge a range of punishment and the possibility of probation or SIS.

> [DEFENSE COUNSEL:] Well, the nature of the – Usually, the discussion starts with if we don't figure something out, then were looking at a 15-year sentence. I don't know if you can get probation or parole on it. I'm not even sure if you can get an SIS on a 571.030, sub. 9. It – The statute is not clear.
> So, in light of that, almost anything would have been better. And that includes assault first, which is a similar punishment level, a B felony. It has a higher percentage of time to serve, but it untied the judge's hands to where he could have considered the whole range of punishment and an SIS and probation. So instead of a mandatory 15-year sentence, because of the – of the switch, [Emmerson] was eligible to get 5 to 15 and could have gotten an SIS or probation.

Defense counsel testified that he discussed the possible punishment that could be imposed by the judge with Emmerson.

> [DEFENSE COUNSEL:] . . . I told him that the range of punishment was 5 to 15, and he might get probation and he might get an SIS, and he might not. Not only that, I told him that I was going to focus real hard on getting him an SIS, because I had learned over the nearly 30 years of doing this – that I've been doing it, that if I don't try hard for the SIS, that it puts a question in the judge's mind of why isn't he trying to get his client an SIS, and I didn't want that question in [the judge's] mind. It – If I – If I go for broke and don't get it all, then, you know, like in this case, 6 years out of 15, it could be worse.

Defense counsel also testified that he did not tell Emmerson he was guaranteed probation or that he would serve only a specific number of months of a sentence imposed. Defense counsel stated that his decision to not risk a 15-year sentence but instead plead for the possibility of five to 15 years was a strategic decision. Counsel stated that Emmerson

was released with a GPS device for nearly two years prior to trial and continued to appear as required during his release, which defense counsel thought was a positive indicator for possible probation. Defense counsel's opinion was that "pretrial release is [often] a trial run for probation"; that "a successful pretrial release oftentimes leads to probation" and "demonstrates the amenability to probation." Defense counsel stated that he gave Emmerson the best advice he could offer. The prosecutor testified that he had "never specifically told any defendant what they were going to be sentenced to or what they were specifically going to serve out of a sentence when going to the Department of Corrections."

Following the evidentiary hearing, the motion court entered its findings of fact and conclusions of law denying Emmerson post-conviction relief. The motion court found Emmerson failed to demonstrate manifest injustice as a result of defense counsel's failure to investigate or advise Emmerson of the judge's practices for sentencing on an *Alford* plea; that Emmerson experienced his medical issue prior to entering his plea; and that an expectation of receiving a lesser sentence than actually imposed did not entitle Emmerson to have his guilty plea set aside. Emmerson timely appeals.

## **Point on Appeal**

Emmerson raises one point on appeal. Point I states:

THE MOTION COURT PLAINLY ERRED IN FINDING THAT [EMMERSON] RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL UNDER U.S. CONST. AMEND. VI AND MO. CONST. ART. I § 8(A) WHEN COUNSEL ADVISED HIM TO ENTER AN *ALFORD* PLEA, IN THAT THE RIGHT TO EFFECTIVE COUNSEL UNDER U.S. CONST. AMEND VI AND MO CONST. ART. I § 8(A) INCLUDES THE RIGHT TO BE ADVISED OF ALL DIRECT CONSQUENCES OF THE PLEA DECISION, AND [EMMERSON] WAS PREJUDICED IN THAT THE SENTENCING COURT INDICATED THAT ITS DECISION TO SEND

11

[EMMERSON] TO PRISON WAS BASED IN PART ON HIS TAKING AN *ALFORD* PLEA.

Emmerson's point on appeal most closely aligns with the claim of error he presented to the motion court in paragraph 8(a) of his amended Rule 24.035 motion. Paragraph 8(a) reads:

> (a) [Emmerson]'s guilty plea was involuntary, unknowing, and unintelligent because plea counsel, P.B., failed to investigate the plea and sentencing judge's practices and advise [Emmerson] accordingly in that in order to have a chance at probation, he needed to actually enter a plea of guilty to the agreed upon charge rather than enter an Alford plea.

Emmerson's point on appeal from the denial of a claim for post-conviction motion cannot expand or enlarge the claim presented to the motion court. *McLaughlin v. State*, 378 S.W.3d 328, 340 (Mo. banc 2012). To the extent his point on appeal expands his claim in his amended motion, we limit our review only to what was claimed before the motion court and included in his point relied on. *Mallow v. State*, 439 S.W.3d 764, 769 (Mo. banc 2014) (holding claims that are not presented to the post-conviction motion court cannot be raised for the first time on appeal).

*Standard of Review*

Appellate review of the denial of a claim for post-conviction relief following a guilty plea is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Burnett v. State*, 681 S.W.3d 702, 706 (Mo. App. S.D. 2023). Findings of fact and conclusions of law are clearly erroneous if the appellate court is left with the definite and firm impression that a mistake has been made. *Morrison v. State*, 701 S.W.3d 879, 884 (Mo. App. S.D. 2024). An appellate court presumes the motion court's findings are correct and defers to its "superior opportunity to judge the credibility of witnesses." *Id.* (quoting *Shockley v.*

12

*State*, 879 S.W.3d 881, 892 (Mo. banc 2019)). "The motion court is free to believe all, part, or none of the testimony presented at the evidentiary hearing." *Id.* The motion court's findings are presumed to be correct. *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016).

*Analysis*

> Post-conviction relief based on a claim of ineffective assistance of counsel must meet the requirements of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A movant must demonstrate that (1) trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under the circumstances and (2) movant was prejudiced as a result of counsel's failure. *Ellswood v. State*, 689 S.W.3d 813, 819 (Mo. App. S.D. 2024).

*Morrison*, 701 S.W.3d at 884. "In reviewing such claims, we are not required to examine both prongs; if [m]ovant fails to satisfy the performance prong, we need not consider the prejudice prong, and vice versa." *Valley v. State*, 679 S.W.3d 133, 136 (Mo. App. S.D. 2023) (citing *Strickland*, 466 U.S. at 697; *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987)).

To satisfy the performance prong of the ***Strickland*** test, Emmerson "must identify specific acts or omissions of counsel that resulted from unreasonable professional judgment," which the motion court must find are outside the range of competent assistance. *Peterson v. State*, 149 S.W.3d 583, 585 (Mo. App. W.D. 2004) (quoting *Middleton v. State*, 103 S.W.3d 726, 733 (Mo. banc 2003)). To satisfy the prejudice prong of the test and demonstrate the requisite prejudice, Emmerson must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable

probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

Here, Emmerson elected to plead guilty to his charges instead of going to trial. A plea of guilty is constitutionally valid only to the extent it is voluntarily and intelligently entered. *Burnett*, 681 S.W.3d at 707. A defendant who pleads guilty waives any claim of ineffective assistance of counsel except insofar as counsel's alleged ineffective conduct affects the voluntariness and knowledge with which the plea was entered. *Id.* Accordingly, a movant who has entered a guilty plea can only satisfy the prejudice prong of an ineffective assistance of counsel claim by showing that but for counsel's alleged ineffective conduct movant would not have pled guilty but would have proceeded to trial. *Id.* An *Alford* plea is not treated any differently than a guilty plea by the motion court or by an appellate court reviewing a motion for post-conviction relief filed pursuant to Rule 24.035. *Moore*, 207 S.W.3d at 729.

The motion court did not clearly err in determining Emmerson was not prejudiced by counsel's failure to investigate or advise Emmerson of the judge's practices for sentencing on an *Alford* plea and determining that his plea was voluntary because Emmerson failed to demonstrate the requisite prejudice. Emmerson fails to allege he would not have entered an *Alford* plea and, instead, would have proceeded to trial but for trial counsel's alleged failures. In fact, Emmerson's amended Rule 24.035 motion specifically claims that but for trial counsel's failure to investigate the plea and sentencing judge's practices regarding an *Alford* plea, and counsel's failure to advise Emmerson accordingly, he "would have been willing to enter a straight plea of guilty, rather than an [*Alford*] plea"; that he would have entered an "actual guilty plea rather than

14

an [*Alford*] plea if he would have been informed of the need to do so by counsel based on this judge's attitude on the subject"; and "[t]here is a reasonable probability under all the facts and circumstances, that had counsel investigated and informed movant of the need, movant would have entered a straight plea of guilty rather than an [*Alford*] plea[.]" Emmerson's attempt to demonstrate prejudice by asserting he would have pleaded guilty without qualification, i.e., not pursuant to *Alford*, is not sufficient to establish prejudice. Emmerson was required to show that but for defense counsel's alleged ineffective conduct, Emmerson would not have pleaded guilty at all and would have instead proceeded to trial. *See **Tinsley v. State***, 685 S.W.3d 56, 60 (Mo. App. S.D. 2024) (quoting ***Easley v. State***, 623 S.W.3d 211, 216 (Mo. App. S.D. 2021)) (finding "[t]o establish prejudice in a guilty-plea case, the movant must prove that he would not have pleaded guilty and would have demanded a trial, but for counsel's errors" after movant entered an *Alford* plea); ***Cooper v. State***, 621 S.W.3d 624, 636 (Mo. App. W.D. 2021) (holding once a movant has pled guilty they can only establish prejudice sufficient to satisfy a claim on ineffective assistance of counsel if movant shows there is a reasonable probability he would have insisted on going to trial); ***Federhofer v. State***, 462 S.W.3d 838, 843 (Mo. App. E.D. 2015) (holding movant failed to establish prejudice for a claim of ineffective assistance of counsel when movant alleged he would have still pled guilty, but would have done so pursuant to an *Alford* plea); ***Ervin v. State***, 423 S.W.3d 789, 795 (Mo. App. E.D. 2013) (holding record did not support a finding that movant would have pled guilty absent counsel's ineffective assistance and, therefore, movant was entitled to post-conviction relief); ***Copas v. State***, 15 S.W.3d 49, 53 (Mo. App. W.D. 2000) (reiterating that, in the context of a guilty plea, prejudice due to ineffective assistance of

15

counsel requires evidence of a reasonable probability that movant would have insisted on proceeding to trial but for counsel's errors). That he did not do. Thus, the motion court's findings of fact and conclusions of law are not clearly erroneous. The motion court's denial of Emmerson's post-conviction relief is affirmed.

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS